UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
KELLY ANDRADE,                                         :
                                                       :
                    Plaintiff,                         :
                                                       :        **DECISION & ORDER**
        v.                                             :        21-CV-5237 (WFK) (SJB)
                                                       :
CULTURAL CARE, INC., MICHAEL                           :
ESPOSITO, and DANIELLE ESPOSITO,                       :
                                                       :
                    Defendants.                        :
                                                       :
--------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 21, 2023, Plaintiff Kelly Andrade ("Plaintiff"), Individual Defendants Michael
Esposito and Danielle Esposito (the "Individual Defendants" or "the Espositos"), and Defendant
Cultural Care, Inc. each filed fully-briefed motions for summary judgment. ECF Nos. 62, 60, 61.
In her Motion, Plaintiff seeks summary judgment on her various claims against the Espositos. ECF
No. 62. In their Motion, the Espositos seek summary judgment in their favor on Plaintiff's claims
against them. ECF No. 60. In its Motion, Cultural Care seeks summary judgment in its favor on
Plaintiff's claims against it. ECF No. 61. For the following reasons, the Court GRANTS
Plaintiff's Motion, DENIES the Espositos' Motion, and GRANTS in part and DENIES in part
Cultural Care's Motion.

## I.    BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1 Statements. Unless

otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed.

On March 5, 2021, Kelly Andrade ("Plaintiff") came to the United States from Colombia

to work as an au pair. Pl.'s R. 56.1 St. ¶¶ 1, 6. Defendant Cultural Care, an au pair program

sponsor, arranged for Plaintiff to live and work in the Staten Island home of Individual

Defendants Michael Esposito and Danielle Esposito (collectively, the "Individual Defendants" or

"the Espositos"). Id. ¶ 8. Upon moving into the Espositos' home, Plaintiff observed what

appeared to be a smoke detector above her bed. Id. ¶ 11. On March 23, 2021, after noticing the

smoke detector had been repositioned on the ceiling, Plaintiff examined the device, at which

point she discovered it contained a hidden camera with a memory card. Id. ¶¶ 17-18. Upon

further inspection, Plaintiff discovered the memory card contained hundreds of recordings of Plaintiff, many of which depicted Plaintiff nude, dressing, or undressing. *Id.* ¶ 18.

Plaintiff immediately took the camera and memory card to the police and filed a report against the Espositos. *Id.* ¶ 20. That same day, Plaintiff resigned from her au pair position. *Id.* ¶ 21. The next day, March 24, 2021, Defendant Michael Esposito was arrested. *Id.* ¶ 23. On April 6, 2022, Defendant Michael Esposito pled guilty to state charges of Unlawful Surveillance in the Second Degree, a Class E felony, and Attempted Unlawful Surveillance in the Second Degree, a Class A misdemeanor. *Id.* ¶ 27. In his plea allocution, Defendant Michael Esposito admitted to purchasing a concealed surveillance camera that looked like a smoke detector and installing the camera in Plaintiff's bedroom without her knowledge. *Id.* ¶¶ 12-14.

Plaintiff initiated the instant action on September 20, 2021. ECF No. 1. On February 7, 2023, the parties filed fully-briefed motions for summary judgment. ECF Nos. 40, 42, 49. However, on August 14, 2023, Plaintiff and the Individual Defendants jointly informed the Court they had agreed to mediate this case and selected a mediator. ECF No. 52. In response, the Court dismissed as moot the pending motions for summary judgment. However, on August 21, 2023, the parties reported mediation was unsuccessful. The Court then directed the parties to re-file their motions for summary judgment and scheduled oral argument on the parties' motions.

On September 6, 2023, the Court held oral argument on the parties' motions for summary judgment. After hearing from the parties, the Court issued oral rulings as to each motion. Specifically, the Court granted Plaintiff's Motion for Summary Judgment against the Individual Defendants and denied the Individual Defendants' Motion for Summary Judgment on Plaintiff's claims. The Court also denied Defendant Cultural Care's Motion for Summary Judgment on Plaintiff's employment discrimination claims, finding issues of material fact regarding the

employment relationship between Defendant Cultural Care and Plaintiff.  *See* ECF No. 71.  The Court informed the parties it would also issue a written decision following the proceeding.  It does so now.

## II.    LEGAL STANDARDS

Summary Judgment

The standard for summary judgment is well settled.  Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact."  *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (internal quotation marks and citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  In determining whether a factual dispute warrants submission to a jury, courts must be "guided by the substantive evidentiary standards that apply to the case."  *Id.* at 255.

A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (per curiam).  A question of material fact does not exist merely because the plaintiff disagrees with the deposition testimony and documentary evidence produced by the defendant.  *See Anderson*, 477 U.S. at

3

247-48.  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  The nonmoving party must put forth specific facts showing there is a genuine issue for trial.  *Anderson v. National Grid, PLC*, 93 F. Supp. 3d 120, 130 (E.D.N.Y. 2015) (Bianco, J.) (quoting *Matsushita*, 475 U.S. at 574).

<u>Collateral Estoppel</u>

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 970, 973 (1979).  "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

As the preclusive effect of a state-court judgment in federal law is determined by state law, New York law governs the preclusive effect of a New York state court judgment.  *See Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984) ("[T]he preclusive effect in federal court of petitioner's state-court judgment is determined by [state] law.").  Under New York law, the doctrine of collateral estoppel is applicable upon a showing of two factors: "[f]irst, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue

must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985).

## III.     DISCUSSION

**Plaintiff's Motion**

Plaintiff seeks summary judgment on her claims against the Espositos with respect to liability. ECF No. 62. Plaintiff argues that since Defendant Michael Esposito pled guilty to unlawfully surveilling her, Plaintiff is entitled to summary judgment on her claims of (1) hostile work environment on the basis of sex and/or gender; (2) constructive discharge; and (3) intentional infliction of emotional distress. Plaintiff argues she has shown the Espositos' liability on each of her claims as a matter of law, relying primarily on the doctrine of collateral estoppel. The Espositos disagree.

### Collateral Estoppel

As an initial matter, the parties dispute whether the doctrine of collateral estoppel applies to Defendant Michael Esposito's criminal plea. Plaintiff argues Defendant Michael Esposito is estopped from litigating the conduct underlying this action. The Espositos disagree and argue Plaintiff cannot rely on Defendant Michael Esposito's guilty plea for estoppel purposes, as "there is not a precise identity of issues between Plaintiff's claims and Mr. Esposito's criminal plea." Indiv. Defs.' Mem. in Opp., ECF No 64, at 10.

Having considered the parties' arguments on this point, the Court finds the doctrine of collateral estoppel applies to Defendant Michael Esposito's guilty plea. "Where a criminal conviction is based upon facts identical to those in issue in a related civil action, the plaintiff in the civil action can successfully invoke the doctrine of collateral estoppel to bar the convicted

5

defendant from litigating the issue of his liability." *McDonald v. McDonald*, 193 A.D.2d 590, 590 (2d Dep't 1993). Even when a full criminal trial has not taken place, a guilty plea has preclusive effect under New York law when made "in a formal court proceeding following a thorough allocution establishing that the defendant understands the rights he is waiving and that he has admitted each of the essential elements of the crime charged." *Halyalkar v. Board of Regents of State of New York*, 72 N.Y.2d 261, 269 (1988). The Epositos miss the point by arguing there is not a "precise identity of issues" between Plaintiff's civil claims and Michael Esposito's criminal plea. *See Doe v. Doe*, 16-CV-0332, 2017 WL 3025885, at *5 (S.D.N.Y. July 14, 2017) (Román, J.) ("Defendant misidentifies the issue that must be identical for the doctrine of collateral estoppel to apply. It is the conduct complained of in both cases (Defendant's unlawful surveillance of Plaintiff) that must be identical for purposes of collateral estoppel, not the named cause of action against Defendant.").

Accordingly, the Court determines the doctrine of collateral estoppel applies to Defendant Michael Esposito's plea. With this in mind, the Court addresses each of Plaintiff's claims, and, for the reasons below, the Court grants Plaintiff summary judgment with respect to liability on each of her claims against the Individual Defendants.

Hostile Work Environment, Constructive Discharge (Defendants Michael Esposito, Danielle Esposito)

*NYSHRL*

Plaintiff brings hostile work environment and constructive discharge claims under the New York State Human Rights Law ("NYSHRL") against both Individual Defendants. "The NYSHRL allows for individual liability under two theories: (1) if the defendant has 'an

ownership interest' in the employer or has 'the authority to hire and fire employees,' and (2) if the defendant aided and abetted the unlawful discriminatory acts of others." *E.E.O.C. v. Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 523 (E.D.N.Y. 2014) (Brodie, J.) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); N.Y. Exec. Law § 296(1), 13; and N.Y. Exec. Law § 296(6)). Here, it is undisputed both Michael Eposito and Danielle Esposito had authority to hire and fire Plaintiff. *See* Indiv. Defs. R. 56.1 St., ECF No. 60-2, ¶ 3 ("In early 2021, Mr. and Mrs. Esposito hired Plaintiff as an au pair."). Thus, both Individual Defendants are subject to the NYSHRL's requirements.

Courts "review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 117 n.2 (2d Cir. 2010). To make out a hostile work environment claim under Title VII, a plaintiff must allege facts demonstrating the treatment in question: "(1) is objectively severe or pervasive—that is. . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal citation and quotation marks omitted). The "discriminatory intimidation" of the plaintiff must be "sufficiently severe or pervasive to alter the conditions of his or her work environment." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011). The severity of discriminatory conduct "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal citation omitted). Plaintiffs may also plead constructive discharge arising out of particularly

pronounced hostile work environments.  For example, "an employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004).

Plaintiff meets those standards here.  Defendant Michael Esposito engaged in an appalling course of conduct by installing a hidden camera above Plaintiff's bed and recording Plaintiff's movements in her bedroom—a room where she was frequently nude, dressing, and undressing, and rightly expected privacy.  Courts in New York have held similar conduct constitutes a *prima facie* hostile work environment in violation of the NYSHRL.  In *Sawicka v. Catena*, for example, the New York Appellate Division for the Second Department ruled in favor of female plaintiffs whose boss placed a hidden camera in their workplace restroom.  79 A.D.3d 848, 850 (2d Dep't 2010) ("The plaintiffs' claims that they were subjected to a hostile work environment, based on sex, which led to their constructive discharge, were supported by evidence that Catena deliberately made their working conditions so intolerable by installing a video camera in the restroom, that a reasonable person in their position would have felt compelled to resign.").

Relying on *Sawicka*, a New York supreme court similarly determined a plaintiff established a hostile work environment claim under the NYSHRL where a physician at the medical office where plaintiff worked installed a hidden camera in the office's restroom.  *Hughes v. Pacienza*, 939 N.Y.S.2d 740 (Sup. Ct. 2011).  That court explained the defendant's "conduct of concealing a camera within an air purifier and informing plaintiff that said device is an air purifier, evidence[d] [his] conduct was covert and unwelcome," that the plaintiff's "work was also affected as evidenced by her reaction, and the fact that she immediately ended her

employment with defendants," and that the defendant "was found liable for such conduct as supported by the felony complaint" in the criminal unlawful surveillance case against the defendant. *Id.* at *6. The court concluded a "reasonable person would find the act of surreptitiously observing an individual's private bathroom function to be an abusive act," and that the plaintiff "by her reaction after discovery of the unlawful surveillance has demonstrated that she subjectively perceived the environment to be hostile." *Id. See also Doe v. Johnson*, 16-CV-750, 2016 WL 11529997, at *1 (S.D. Cal. Dec. 14, 2016) (Whelan, J.) (finding "Plaintiffs' allegations satisfy the subjective and objective elements of a [Title VII] hostile work environment claim" where female plaintiffs alleged their male supervisor installed a hidden camera in drain of women's restroom which captured images including "a female's undergarment-clad breast as she changed her shirt in the restroom, and images of part of a female's naked buttock as she prepared to sit on the toilet and again as she stood").

The Espositos attempt to distinguish cases involving hidden cameras in restrooms from the hidden camera placed in Plaintiff's bedroom. *See* Indiv. Defs. Opp. at 15-16. However, the Court is unconvinced by these arguments. The actions that take place in a bedroom are comparably intimate to those that occur in a restroom. Plaintiff was often nude or undressing in her bedroom, as were the plaintiffs in *Hughes, Sawicka,* and *Johnson* in their workplaces' restrooms. And, just like the defendants in those cases, Defendant Michael Esposito surreptitiously recorded Plaintiff when she was physically vulnerable and believed she was alone. The Espositos fail to draw any principled distinction between unlawfully surveilling in a restroom versus a bedroom. As such, Plaintiff has made out that her workplace was objectively hostile, and that she subjectively perceived it to be so. After all, Plaintiff immediately brought the smoke detector and SIM card to the police, and she later testified to the mental toll she has

experienced following Michael Esposito's conduct.  *See* Pl. Dep., ECF No. 62-6, at 17:16-18 ("I suffer from depression[,] anxiety and stress").

Further, Plaintiff has established the hostile work environment created by Michael Esposito's unlawful surveillance led to her constructive discharge.  As the United States Supreme Court has explained, the relevant inquiry "is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004).  Work conditions are "intolerable" if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.  *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

Here, the conditions of Plaintiff's workplace meet that standard.  The *Hughes* and *Sawicka* courts determined the defendants in each of those cases made working conditions so intolerable by installing hidden cameras in office restrooms that the plaintiffs were forced to resign.  *See Hughes*, 939 N.Y.S.2d 740 at *6; *Sawicka*, 79 A.D.3d at 850.  Here, too, a reasonable person in Plaintiff's position would feel compelled to resign upon discovering Defendant Michael Esposito's severe intrusion of Plaintiff's privacy.  As such, Plaintiff has established both her hostile work environment and constructive discharge claims against the Espositos under NYSHRL.

*NYCHRL*

The New York City Human Rights Law ("NYCHRL") "was intended to be more protective than the state and federal counterpart."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (McMahon, J.).  "[I]f a claim is viable under the NYSHRL, it is as

10

a matter of law viable under the NYCHRL, and there is no need for further inquiry." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 260 (S.D.N.Y. 2014) (Failla, J.) (internal citation omitted). The Court has already determined Plaintiff has established her hostile work environment and constructive discharge claims under the NYSHRL. Accordingly, the Court finds Plaintiff has made out the same claims under the NYCHRL, as well. *Id.* at 260.

<u>Intentional Infliction of Emotional Distress (Defendant Michael Esposito)</u>

Plaintiff also claims Defendant Michael Esposito is liable for intentional infliction of emotional distress. The Restatement [Second] of Torts § 46 provides "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such distress." Under New York law, a plaintiff must prove four elements to recover for the intentional infliction of emotional distress: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993). The *Howell* court noted the tort is "as limitless as the human capacity for cruelty." *Id.* at 122. A plaintiff claiming intentional infliction of emotional distress must demonstrate the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement [Second] of Torts § 46, comment *d*).

All four elements of the tort are satisfied here. The first two elements—(i) extreme and outrageous conduct, and (ii) the intent to cause, or disregard of a substantial probability of causing,

severe emotional distress—are established by Defendant Michael Esposito's guilty plea. Defendant acted in an extreme and outrageous manner by surreptitiously filming Plaintiff in her bedroom, including when she was naked. *See Doe*, 2017 WL 3025885, at *6 ("Defendant acted in an extreme and outrageous manner when he filmed Plaintiff in a situation where she had a reasonable expectation of privacy"). Moreover, Defendant's criminal allocution establishes he acted intentionally in installing a hidden camera and recording Plaintiff in her bedroom thereby establishing the second element of this claim. *See* Plea Tr., ECF No. 62-4, at 14-15 (reporting Michael Esposito's allocution that for his "own amusement [he] intentionally used and installed an imaging device to surreptitiously view and record [Plaintiff] dressing and undressing or the sexual or other intimate parts of [Plaintiff] at a place and time when [Plaintiff] had a reasonable expectation of privacy and without [Plaintiff's] knowledge or consent.").

To establish the remaining two elements of the tort, Plaintiff must show Defendant Michael Esposito's admitted conduct caused her alleged injuries, and that those injuries were severe. However, New York courts are divided on the issue of whether medical evidence of a plaintiff's injuries is necessary to determine the causation and severity of those injuries. Some courts have stated claims of emotional injuries "must be supported by medical evidence, not the mere recitation of speculative claims." *Walentas v. Johnes*, 257 A.D.2d 352, 353 (1st Dep't 1999); *see also Biberaj v. Pritchard Industries, Inc.*, 859 F. Supp. 2d 549, 565 (S.D.N.Y. 2012) (Gardephe, J.) (finding plaintiff's claim she became "ill" and had to leave work early because of her coworkers' insults was too speculative to survive defendant's motion to dismiss without medical evidence of causation). However, other courts applying New York law have recognized "[i]n some cases, the allegations are such that severe emotional distress requires no medical evidence." *Sylvester v. City of New York*, 385 F. Supp. 2d 341, 444 (S.D.N.Y. 2005) (Koeltl, J.). When there are "special

circumstances out of which would arise 'an especial likelihood of genuine and serious mental distress ... [that would serve] as a guarantee that the claim is not spurious,'" these courts have forgone the need for medical proof of causation or severity of emotional injuries. *Hering v. Lighthouse 2001, LLC*, 21 A.D.3d 449, 451 (2d Dep't 2005) (quoting *Johnson v. State of New York*, 37 N.Y.2d 378, 382 (1975)).  Indeed, the Second Department has found "[w]hile evidence of a specific medical diagnosis or course of treatment may be relevant to the issue of damages, it is not essential to the prosecution of [] an inherently genuine claim." *Plunkett v. NYU Downtown Hospital*, 21 A.D.3d 1022, 1023 (2d Dep't 2005); *see also Massaro v. Charles J. O'Shea Funeral Home*, 292 A.D.2d 349, 351 (2d Dep't 2002) (finding "the fact that [plaintiff] ha[d] not sought psychological counseling for his alleged injuries, while relevant to the issue of damages, [did] not necessarily preclude his recovery").

Defendant Michael Esposito argues Plaintiff cannot make out her tort claim because she has little proof she suffered severe emotional distress or that Defendant Michael Esposito caused her distress. *See* Indiv. Defs. Opp. at 16-17.  The Court disagrees.  First, Plaintiff testified to experiencing depression, anxiety, and stress stemming from her discovery of the camera.  Pl. Dep. at 17:16-18.  More important, though, the Court finds this case is one in which "evidence of a specific medical diagnosis or course of treatment" is not essential to Plaintiff's claim.  Rather, Defendant Michael Esposito has admitted conduct entailing an "especial likelihood of genuine and serious mental distress" on the part of Plaintiff sufficient to overcome the need for medical corroboration. *See Johnson*, 37 N.Y.2d at 382; *see also Doe*, 2017 WL 3025885, at *7 (finding medical corroboration unnecessary to prove severe distress where defendant filmed plaintiff engaging in sexual intercourse); *Sawicka*, 79 A.D.3d at 850 ("The evidence is sufficient, as a matter of law, to establish that [surreptitiously filming plaintiffs in the restroom] caused plaintiffs

13

severe emotional distress.").

Moreover, expert medical testimony is unnecessary to establish causation and severity where the factfinder "must draw only a common sense causal connection between a plaintiff's injury and one precipitating cause." *Young v. Sw. Airlines Co.*, 409 F. Supp. 3d 110, 116 (E.D.N.Y. 2017) (DeArcy Hall, J.). The Court determines this is such a case. It takes only common sense to connect Plaintiff's anxiety and depression to Defendant Michael Eposito's outrageous invasion of Plaintiff's privacy. *See Doe*, 2017 WL 3025885, at *8 ("[Depression, humiliation and anxiety] are injuries that a reasonable finder of fact would logically attribute to Defendant's abhorrent conduct [of filming plaintiff during sexual intercourse and distributing it to others], even absent medical corroboration of such a connection."). As such, Plaintiff's injuries satisfy the remaining elements of the tort of intentional infliction of emotional distress. Accordingly, Plaintiff is granted summary judgment on the issue of liability on her intentional infliction of emotional distress claim. *See id.*

**Individual Defendants' Motion**

The Espositos move for summary judgment on Plaintiff's claims against them. ECF No. 60. The Court has just explained it grants summary judgment in Plaintiff's favor on these claims and rejects the Espositos' arguments in opposition. As such, the Espositos' Motion is denied in its entirety.

14

**Defendant Cultural Care's Motion**

Defendant Cultural Care also moves for summary judgment on Plaintiff's claims against it. ECF No. 61. These include employment discrimination claims under Title VII, the NYSHRL, and the NYCHRL; aiding and abetting claims under the NYSHRL and NYCHRL; an interference claim under the NYCHRL; and a negligence claim. For the following reasons, the Court denies Cultural Care's Motion with respect to Plaintiff's employment discrimination claims, but grants Cultural Care's Motion regarding Plaintiff's aiding and abetting, interference, and negligence claims.

<u>Employment Discrimination Claims</u>

*Cultural Care's Employment of Plaintiff*

Cultural Care argues the Court should grant summary judgment in its favor because "there is simply no evidence, direct, circumstantial, or otherwise, which exhibits that Cultural Care employed Plaintiff." Cultural Care Mem., ECF No 61-1, at 10. Instead, Cultural Care argues the "relationship between Cultural Care and Plaintiff was that of a program sponsor and Cultural Care solely acted to facilitate the placement of Plaintiff with [the Espositos]." *Id.* at 10-11. Plaintiff disagrees and argues, at a minimum, she has shown issues of material fact exist regarding whether Cultural Care was Plaintiff's joint employer and thus whether Cultural Care can be held liable for the Espositos' conduct. Pl. Mem. in Opp., ECF No. at 7-11.

For a corporate defendant to be liable for alleged discrimination under Title VII, the NYSHRL, and the NYCHRL, the defendant must qualify as the plaintiff's "employer." *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 321 (S.D.N.Y. 2020) (Engelmayer, J.). A corporate defendant need not be a plaintiff's direct employer to be liable under these statutes.

*Id.* at 322-23.  Rather, under the joint employer doctrine, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer."  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).  The Second Circuit recently addressed the joint employer inquiry in the Title VII context, "concluding that non-exhaustive factors drawn from the common law of agency, including control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance, and payroll, are relevant to this inquiry."  *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022).[1]  A joint or constructive employer relationship exists "when two or more entities, according to common law principles, share significant control of the same employee"—that is, when "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities."  *Id.* at 843-44.  "[T]he exercise of control is the guiding indicator."  *Id.* at 844.

The Court finds there is a factual question about whether Cultural Care served as Plaintiff's joint employer.  The contract between Cultural Care and Plaintiff indicates Cultural Care has the power to hire and terminate au pairs, as well as to transfer au pairs between host families.[2]  *See* Cultural Care Mem., Ex. 7, ECF No. 61-2, at 109-10.  The contract, which Plaintiff signed, states,

---

[1] This inquiry also applies in the NYSHRL and NYCHRL contexts.  *See Farmer*, 473 F. Supp. 3d at 321 (noting employer-employee tests from Title VII are applied to the NYSHRL and NYCHRL).

[2] At oral argument, counsel for Cultural Care claimed the contract was between a different corporate entity and au pairs, as the contract lists the relevant entity as "Cultural Care (registered business name of International Care, Ltd.)".  *See* Cultural Care Mem., ECF No. 61-2, at 109-10.  However, counsel stated he was unsure of the exact corporate relationship between Cultural Care and International Care, Ltd.  As the Court stated during oral argument, and as it reiterates now, it is unconvinced by Cultural Care's attempt to separate itself from the contract.  The contract repeatedly and solely refers to the hiring entity as "CC"—that is, Cultural Care.

"I understand that if [Cultural Care ("CC")] determines that my emotional or physical state does not make me suitable for providing quality childcare, I will be removed from the Program." *Id.* at 110. The contract continues, "I also understand that should I marry or become pregnant while on the Program I will also be removed from the Program." *Id.* The contract further requires au pairs to acknowledge:

> "I understand that I may be terminated from the Program if I do not successfully complete the Program requirements and uphold Program expectations for reasons including, but not limited to, the following: leaving the host family without prior consent from CC; engaging in behavior that CC deems inappropriate during the Program duration, performance reasons including but not limited to breaking host family rules, neglectful or inappropriate behavior towards the children, etc.; non-participation in training, not fulfilling educational credit, non-attendance at monthly meetings, or if I in any way violate this Agreement." *Id.*

The contract includes additional circumstances under which Cultural Care can terminate au pairs' employment. Moreover, the contract permits Cultural Care to move au pairs to different host families, *id.* at 109, and also determines an applicant's eligibility for the program in the first place, *id.* In sum, the contract gives Cultural Care substantial authority over au pairs' employment, precluding summary judgment on the basis of a lack of employment relationship between Cultural Care and Plaintiff. *Pappas v. XP Controle Participacoes S.A.*, 19-CV-11137, 2023 WL 317353, at *5 (S.D.N.Y. Jan. 18, 2023) (Woods, J.) ("[A]s both *Felder* and the general common law of agency that it drew upon recognize, the ability to significantly control an employee's employment—even if that control is not constantly exercised—can create an employment relationship."). *See also Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309, 322 (D. Mass. 2021), *aff'd on other grounds sub nom. Posada v. Cultural Care, Inc.*, 66 F.4th 348 (1st Cir. 2023) (finding plaintiffs adequately alleged Cultural Care was their employer in Fair Labor Standards Act case since "Cultural Care . . . retains full discretion of whether to end an au pair's placement, whether to end an au pair's participation in the program entirely, and whether to permit

17

their participation in the first place").

*Cultural Care's Alleged Discrimination*

Cultural Care next argues that, even if the Court finds Cultural Care employed Plaintiff, the Court should still grant summary judgment in Cultural Care's favor because it did not create a hostile work environment or constructively discharge Plaintiff. Cultural Care Mem. at 14-16 ("If Plaintiff was subjected to any discrimination or hostile work environment, it came solely at the hands of Co-Defendant Michael Esposito.").

However, this argument fails. As the Court just described, a factual question exists regarding the employment relationship between Plaintiff and Cultural Care. Accordingly, whether the Individual Defendants' discriminatory conduct can be imputed to Cultural Care hinges on that question of fact.

Aiding and Abetting Claims

Cultural Care also moves for summary judgment on Plaintiff's aiding and abetting claims under the NYSHRL and the NYCHRL. Cultural Care argues summary judgment is appropriate on these claims as there is no evidence Cultural Care was aware of, let alone aided and abetted, Defendant Michael Esposito's criminal behavior. Cultural Care Mem. at 16-17. Plaintiff offers no response in opposition to this portion of Cultural Care's motion. *See generally* Pl. Mem. in Opp., ECF No. 66.

Both the NYSHRL and the NYCHRL prohibit "aid[ing], abet[ting], incit[ing], compell[ing] or coerc[ing] the doing" of any unlawful acts of discrimination under either title, including sexual harassment and retaliation. N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6). The same standard governs aiding and abetting claims under the NYSHRL and the

NYCHRL "because the language of the two laws is virtually identical." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation and citation omitted).  To state a claim for aiding and abetting unlawful harassment, discrimination, or retaliation, a plaintiff must instead plead that the defendant "actually participate[d]" in such unlawful conduct by the employer. Farmer, 473 F. Supp. 3d at 337 (internal citations and quotations omitted).  Further, aiding and abetting "liability requires that the aider and abettor share the intent or purpose of the principal actor." *Fried v. LVI Servs., Inc.*, 10-CV-9308, 2011 WL 2119748, at *8 (S.D.N.Y. May 23, 2011) (Rakoff, J.).

Here, the Court agrees with Cultural Care: Plaintiff has not put forth evidence that Cultural Care was aware of Defendant Michael Esposito's criminal conduct, let alone that it shared his intent or participated in his surveillance scheme.  Instead, the record indicates Cultural Care was unaware of Esposito's conduct until his arrest, at which point his surreptitious surveillance had ended.  *See* Cultural Care Mem., Ex. 4 (Michael Esposito Dep.), ECF No 61-2, at 15:8-14 ("Q: At any time, to your knowledge, did you discuss the smoke detector, the camera, or anything with anybody from Cultural Care? A: No. Q: Was Cultural Care in any way advised or aware that you had a camera in Kelly's bedroom? A: No."); *see also McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 85 (S.D.N.Y. 2020) (Engelmayer, J.) (explaining aiding and abetting claim failed because "by the date [the defendant] was first on notice of such conduct, the harassment had ended").  Accordingly, the Court grants summary judgment in favor of Cultural Care on Plaintiff's aiding and abetting claims under the NYSHRL and the NYCHRL.

Interference Claim

Cultural Care next moves for summary judgment on Plaintiff's interference claim under

19

the NYCHRL, arguing there is no evidence Cultural Care interfered with or took any other adverse action relating to Plaintiff's participation in the au pair program. Cultural Care Mem. at 18. Again, Plaintiff offers no response to this portion of Cultural Care's Motion. *See generally* Pl. Mem. in Opp.

The NYCHRL provides "[i]t shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of such person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section." N.Y.C Admin. Code § 8-107(19). "A threat is a required element of a claim a claim for violation of Section 8-107(19)." *Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 236 (S.D.N.Y. 2022) (Failla, J.). "As defined in the Second Circuit, a 'threat' is the creation of '[a]n impression of impending injury.'" *Sletten v. LiquidHub, Inc.*, 13-CV-1146, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (Buchwald, J.) (quoting *United States v. Davila*, 461 F.3d 298, 302 (2d Cir. 2006)).

Again, the Court agrees with Cultural Care on this point. The record is entirely devoid of evidence that Cultural Care interfered with Plaintiff's participation in the au pair program, including any evidence of a threat as required to plead an interference claim under the NYCHRL. Accordingly, the Court grants summary judgment in favor of Cultural Care on Plaintiff's interference claim.

Negligence Claim

Finally, Cultural Care argues Plaintiff's negligence claim must fail because Plaintiff

released Cultural Care from tort claims related to her employment.[3]  Tellingly, Plaintiff offers no response to this argument; in fact, she does not acknowledge the existence of the release in her opposition to Cultural Care's Motion.  *See generally* Pl. Mem. in Opp.; *see also* Cultural Care Reply, ECF No. 69, at 10 ("As a threshold matter, Plaintiff's Opposition wholly disregards the enforceability of the Au Pair Agreement's release.").

In New York, interpretation of a release is governed by contract law.  *See Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240, 250 (S.D.N.Y. 2014) (Koeltl, J.).  Rules of contract "provide that '[c]ourts applying New York law will enforce valid releases which are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not the product of fraud, duress, or undue influence.'"  *Id.* (quoting *DiFilippo v. Barclays Capital, Inc.*, 552 F. Supp. 2d 417, 426 (S.D.N.Y. 2008) (Marrero, J.)).

 The Court finds no reason to set aside the au pair agreement's release here.  The release states:

> "I agree to irrevocably, unconditionally, and fully remise, release and forever discharge CC . . . from any and all claims or causes of action which I have or may hereafter have, which arise out of illness, injury, damage or loss of any other kind to me or my property resulting from or during participation in the Program.  This includes, without limitation, my performance of services for and involvement with the host family, regardless of how such illness, injury, damage or loss may arise. I further *agree to indemnify and hold harmless the Released Parties from and against any losses, claims, damages or liabilities related to or arising out of my participation in the Program, including (without limitation) any illness, injury or damage to me, that my host family causes, that any third party causes*, that I cause or to which I contribute, and any illness, injury or damage to my host family which I cause or to which I contribute." Cultural Care Mem., Ex. 7, ECF No. 61-2, at 110 (emphasis added).

---

[3] Of course, this release cannot apply to Plaintiff's statutory employment discrimination claims.  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII.").

Plaintiff signed the contract containing this release on April 14, 2020. *See id.* The language of the release clearly applies to claims for "any illness, injury or damage to [Plaintiff]" "related to or arising out of [her] participation in the Program," including any injury caused by Plaintiff's host family. *Id.* Thus, the Court concludes the language of the release is unambiguous.

Plaintiff has offered no evidence, nor makes any argument, that she entered into the release as a result of "fraud, duress, or undue influence." *See Nikci*, 995 F. Supp. 2d at 250. Without such evidence, the Court finds no reason to set aside the valid release between Cultural Care and Plaintiff. As such, the Court grants summary judgment in favor of Cultural Care on Plaintiff's negligence claim.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Espositos' Motion for Summary Judgment, and DENIES in part and GRANTS in part Cultural Care's Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 60, 61, and 62.

**SO ORDERED.**

**s/WFK**
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 13, 2023
      Brooklyn, New York

22